Nott, J.,
delivered tbe opinion of tbe court:
This case was decided adversely to tbe claimant at tbe last term of tbe court (28 O. Cls. R., 57). Her counsel now seeks to have the decision reviewed. As tbere is no appellate jurisdiction jn these Congressional cases, this court is always willing to review its decisions on tbe motion of either party when a reasonable doubt exists. There are two questions for review, which will be considered separately.
I. It appears by tbe evidence that late in tbe summer or early in tbe autumn of 1862 tbe gunboat Essex captured a flatboat on tbe Mississippi upon which was a large quantity of sugar and molasses. Tbe property so seized was taken from tbe flatboat and placed on board tbe capturing vessel. Here tbe evidence stops. It does not appear whether the sugar and molasses were taken for use, were taken as prize, or were *266 turned, over to tbe chief commissary of the Department of the Gulf, to find their way eventually into the abandoned or captured property fund.
The seizure was anterior to the Abandoned or Captured Property Act, but the Act in Addition 2d July, 1864 (12 Stat. L., p* 375), brought all funds derived from captured projmrty within the operation of the previous act (Goodman’s Case, 14" C. Cls. R., 547). If money was derived from this capture and went into the abandoned or captured property fund, the claim is barred and the court without jurisdiction.
In the previous decision it was said of this seizure that “ the presumption is that it was not an appropriation for the use of the Army or Navy” within the meaning of the act giving the court jurisdiction “but a destruction of property as an act of war.”
■ The language in an opinion must always be interpreted in the light of the facts to which it refers. Ordinarily a claimant coming into this court under the Bowman Act is entitled to have the facts of his case found. But there are cases as to which the court is prohibited from exercising jurisdiction. Among these are cases which were barred when'the act passed, and cases growing out of the civil war. An exception is made in the latter class in favor of “ supplies or stores taken by or furnished to any part of the military or naval forces of the United States for their use” (Section 4). If the property taken was sold and the proceeds directly or constructively went into the capture fund; or, if the property taken was not taken for use but to despoil the enemy and no benefit to the Government is affirmatively shown; or, if the property was damaged or destroyed, the court is without jurisdiction. (Gonard’s Oase, 25 O. Cls. R., 433.)
In this case the capture is shown to have been by a naval vessel. It is said in the motion that the property was “taken by a transport belonging to the Army and not to the Navy,” and that the gunboats on the Mississippi at the time of the seizure “were not subject to naval authority.” But there is nothing to show that the commanding officer of the Essex was not subject to Navy regulations. The duty of a naval officer at that time was prescribed by Navy regulations, 720:
“Should it be absolutely necessary to take out of a vessel seized as a prize any property, either for its better preservation or for the use of vessels or armed forces of the United States, *267 a correct inventory shall be made of it, and also a careful appraisement of its value, by suitable officers qualified to judge of such value. This inventory and appraisement shall be made in duplicate, one part of which shall be transmitted to the Secretary of the Navy and the other to the judge or United States attorney of the district to which the prize may be sent.”
The log of the Essex has not been produced; no officer or seaman of the vessel has been called as a witness; it does not appear whether an inventory was or was not filed; it does not appear that the property'was taken for use, nor what became of it; and with such a failuré of evidence .to bring the case within the intent and purpose of the statute it must be presumed that the claim comes within the effect of the prohibitory clauses. It was not the purpose of the statute that the court should investigate any or every act of the Army or Navy by which a claimant was aggrieved, but only such as would entitle him, within the intent of the law, to Congressional relief.
II. In 1863 the steamer Bed Chief was captured at Port Hudson. She had been in the military service of the enemy, navigated by the decedent, her owner, and manned by his crew. She had also been in the Confederate service under a former owner. The excuse offered on the trial of the issue of the decedent’s loyalty was that he had so acted, in navigating the vessel, to save the boat from Confederate confiscation, she having been seized and impressed without his consent. This condition of affairs, this involuntary action of the owner, which was held to excuse him for his personal service, does not help the case when it is considered with reference to the question of jurisdiction.
The first section of the Abandoned and Captured Property Act (12 Stat. L., p. 820) expressely declares “that such property shall not include any kind or description which has been used, or which was intended to be‘ used, for waging or carrying on war against the United States, such as arms, ordnance, ships, steamboats, or other water craft;” and it leaves such property subject to the operation of the laws of war and the confiscation act. The case of Slawson (16 Wall., 310) is almost identical with this.
The Eed Chief continued in the military service of the Confederate States until resistance at Fort Hudson was about to cease. Then, when she was no longer needed, the owner ran *268 ber into a creek near by. On tbe day of, or tbe day after, tbe surrender sbe was seized, as all other property wbicb bad been in tbe service of tbe enemy was seized, and turned oyer to tbe Quartermaster Department.
Under tbe decisions of tbe Supreme Court tbe legal status of tbe vessel was that of enemy’s property, captured in enemy’s territory for baying been in tbe enemy’s service. Tbe vessel was not property of tbe fourth class, designated in Klein’s Gase (13 Wall., 128) as a limited class of property entitled to tbe benefit of tbe Abandoned and Captured Property Act. Whether tbe owner was loyal or disloyal did not affect its status. Loyalty was a question only in tbe captured property cases; in all others such an owner was in law an enemy.
Whether tbe property in tbe vessel passed by capture to tbe captors as other personal property captured in enemy’s territory passes — that is to say, whether confiscation proceedings were necessary to divest title, is a question which need no£ be considered. It is enough that tbe property did not come within tbe Abandoned and Captured Property Act, where a loyal owner might prefer a valid claim to tbe proceeds, and tli at, under tbe decision of tbe Supreme Court in tbe case of Mrs. Alexander’s Cotton (2 Wall., 404), be could assert a claim for the proceeds in no other way.
But tbe owner did appear in certain legal proceedings, and did also present to tbe Secretary "of War (under whose control tbe proceeds of tbe vessel then were) a claim for tbe proceeds of tbe vessel and for compensation for ber use, tbe latter being tbe present claim.
Upon this application the Secretary, in effect, offered a compromise, that tbe proceeds be surrendered to tbe applicant without, further litigation upon the condition that be should surrender “all further claims against the United States for said boat.” Tbe terms proffered were accepted, tbe money was paid, and tbe compromise effected. That compromise barred tbe owner from again asserting a demand against tbe United States for tbe use of tbe boat, and tbe court is without jurisdiction to reopen tbe claim.
Tbe order of tbe court is that the motion of tbe claimant be overruled.